**NOT FOR PUBLICATION**

FILED

MAR 10 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JULIO AGUILAR-PADILLA,

Plaintiff - Appellee,

v.

BOYDSTUN EQUIPMENT MANUFACTURING, LLC, an Oregon limited liability company,

Defendant - Appellant.

Nos. 24-4536, 25-276

D.C. No.
3:21-cv-00753-MO

MEMORANDUM*

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted February 5, 2026
Portland, Oregon

Before: BEA, CHRISTEN, and DESAI, Circuit Judges.

Boydstun Equipment Manufacturing fired Julio Aguilar-Padilla after he took COVID-19 leave pursuant to an Oregon state agency's COVID-era administrative rule designed to protect quarantining workers from retaliation. *See* Or. Admin. R. 437-001-0744(3)(l)(B) (2020) (hereinafter "COVID Rule"). Aguilar-Padilla sought

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

statutory and noneconomic damages pursuant to federal and Oregon state employment laws. The district court resolved some of Aguilar-Padilla's claims on summary judgment. At trial, a jury concluded Boydstun unlawfully terminated Aguilar-Padilla and awarded damages. The district court rendered judgment in Aguilar-Padilla's favor and awarded his counsel full attorney's fees. Boydstun appeals both the judgment in Aguilar-Padilla's favor and the attorney's fees award. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part and vacate and remand in part.[1]

1. The Oregon Safe Employment Act (OSEA) includes an anti-retaliation provision that states it is unlawful to take retaliatory employment action against an employee because the employee "exercised on [his own] behalf . . . any right afforded by" statutes enumerated in the OSEA. Or. Rev. Stat. § 654.062(5)(c). Boydstun argues that the anti-retaliation provision does not support Aguilar-Padilla's retaliation claim because it is based on an administrative rule rather than one of the statutes enumerated in the anti-retaliation provision. We review de novo the district court's application of state law. *Judd v. Weinstein*, 967 F.3d 952, 955 (9th Cir. 2020). When determining the meaning of a state law without on-point state court authority, "we must 'predict how the highest state court would decide the issue

[1] Because the parties are familiar with the facts underlying this appeal, we do not detail them here.

using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.'" *Id.* at 955–56 (quoting *Lewis v. Tel. Emps. Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996)). Specifically, the Oregon Supreme Court has directed that statutes are to be interpreted by examining text and context, as well as "pertinent legislative history that a party may proffer . . . . where that legislative history appears useful to the court's analysis." *State v. Gaines*, 206 P.3d 1042, 1050 (Or. 2009).

The statutes enumerated in the OSEA's anti-retaliation provision are capacious: one mandates that employers provide "a place of employment which is safe and healthful for employees," Or. Rev. Stat. § 654.010; and another requires employers to comply with "every requirement of every order, decision, direction, standard, rule or regulation made or prescribed" by Oregon's occupational health and safety agency for health and safety purposes, Or. Rev. Stat. § 654.022. The agency's COVID Rule details requirements that employers must follow to protect employee health and safety during the pandemic pursuant to Or. Rev. Stat. §§ 654.010 and 654.022. *See* Or. Admin. R. 437-001-0744 ("These rules are needed to protect workers throughout the state in the context of the current public health

emergency”).[2] The OSEA affords a private cause of action for employees. Or. Rev. Stat. § 654.062(6)(c).

The district court did not err by concluding that Boydstun’s violation of the COVID Rule supported Aguilar-Padilla’s claim pursuant to the OSEA’s anti-retaliation provision. Boydstun’s arguments to the contrary would narrow the scope of the anti-retaliation provisions codified at Or. Rev. Stat. § 654.062(a) and (b) in a manner contrary to Oregon case law. *See Vergara v. Patel*, 471 P.3d 141, 152–53 (Or. Ct. App. 2020) (cleaner’s refusal to work without gloves—a protective equipment requirement established by administrative rule—was actionable pursuant to the anti-retaliation provisions).

2. Boydstun next argues that, to the extent the COVID Rule “afforded” a right pursuant to the OSEA, it was the right to return to work after quarantine. Therefore, Boydstun argues, it did not violate the COVID Rule’s requirements because Aguilar-Padilla did not attempt to return to work.

The COVID Rule provided that whenever a state or local public health agency or a medical provider “recommends an employee be restricted from work due to quarantine or isolation for COVID-19,” an employer must “direct[]” the employee

---

[2] The operative version of the COVID Rule was effective through May 2021, after which it was temporarily re-adopted and amended several times until its repeal in 2023. Oregon Dep’t of Consumer & Bus. Servs., *437-001-0744: Rule Addressing COVID-19 Workplace Risks*, https://secure.sos.state.or.us/oard/viewSingleRule.action?ruleVrsnRsn=304311 (last accessed Feb. 25, 2026).

to "isolate at home and away from other non-quarantined individuals." Or. Admin. R. 437-001-0744(3)(l)(B). The COVID Rule also provided that such employee "must be entitled to return to their previous job duties," *id.*, and gave notice to employers that retaliating against an employee who quarantined would violate the anti-retaliation provisions in the OSEA. Or. Admin. R. 437-001-0744(3)(l)(C). In Oregon, agency rules are subject to "the same interpretive framework" as state statutes. *Godinez v. SAIF Corp.*, 346 P.3d 530, 534 (Or. Ct. App. 2015).

The text of the COVID Rule plainly protects an employee's ability to take leave by requiring that an employer maintain a position for him. Thus, dismissal of an employee during quarantine because he participated in quarantine violated the right established by the COVID Rule. *Cf. Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) (explaining similar federal anti-retaliation statute's provision that employee's rights are presumptively denied when an employer fails to reinstate an employee who was on protected leave). The district court did not err in interpreting the scope of the right afforded by the COVID Rule.

3. Boydstun argues that Jury Instruction 14 incorrectly stated the scope of employer and employee duties created by the COVID Rule, thereby allowing the jury to find that Boydstun retaliated against Aguilar-Padilla even if Aguilar-Padilla had failed to quarantine. "We review de novo whether a district court's jury instructions accurately state the law," and because Boydstun objected to Instruction

14, "we review for abuse of discretion [the] district court's formulation" of the instruction. *Coston v. Nangalama*, 13 F.4th 729, 732 (9th Cir. 2021) (citation omitted). "We consider the issued instructions as a whole, but reversal is not warranted" if the error was "more probably than not harmless." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1065 (9th Cir. 2020) (citation modified).

We conclude that the district court reasonably read the COVID Rule to require Boydstun to direct Aguilar-Padilla to quarantine, and that Aguilar-Padilla had a right—and a corresponding duty—to quarantine. But even if Instruction 14 was erroneous, any error was more probably than not harmless. *See id.*

First, Aguilar-Padilla testified that he knew he had a duty to quarantine. Second, though the jury heard competing stories about why Aguilar-Padilla was fired—Aguilar-Padilla argued he was fired for quarantining, while Boydstun alleged it fired Aguilar-Padilla for not quarantining correctly—the jury was presented with compelling evidence that Aguilar-Padilla was fired for quarantining. *Cf. Sanders*, 657 F.3d at 782 (finding harmful error where "neither the jury's verdict nor the evidentiary record" permitted the court to determine whether a party had carried its burden). The jury heard Aguilar-Padilla testify that, even before Boydstun was made aware that Aguilar-Padilla might be leaving his home to buy groceries or obtain medication, a Boydstun supervisor threatened to fire him because he did not come into work and refused to provide proof of his wife's positive COVID test result, not

because the supervisor suspected Aguilar-Padilla was failing to quarantine.[3] Testimony and contemporaneous documentation at trial showed that Boydstun's central concern was Aguilar-Padilla's failure to report to work and refusal to provide his wife's COVID test result. The jury also heard evidence that, despite Boydstun's arguments that it took COVID-19 seriously and encouraged employees to quarantine, Boydstun allowed another COVID-exposed employee to return to work without testing and fired a third employee who took leave to quarantine. Boydstun's owner testified that he terminated that third employee because he had failed to quarantine, but the evidence included a contemporaneously created company record about that employee's termination reflecting only that Boydstun was adamant the employee provide proof of his wife's positive COVID test result, which he refused to do. The company record did not show that Boydstun suspected the employee was not quarantining. Rather, the company's records reflect that this third employee and Aguilar-Padilla were both terminated for "abandon[ing]" their positions.

The jury specifically found that Aguilar-Padilla's assertion of a protected right was at least "a substantial factor" causing the adverse employment action. The only protected right that Aguilar-Padilla asserted was the right to quarantine free from

[3] An unchallenged jury instruction defined "adverse employment action" as both threatening to terminate Aguilar-Padilla and terminating him.

retaliation. On this record, we conclude that any error in Instruction 14 was more probably than not harmless.

4. Boydstun challenges the district court's award of full attorney's fees to Aguilar-Padilla. Boydstun argues that Claim 2, the anti-retaliation claim, was not inextricably intertwined with Claim 1, the fee-bearing federal claim. In Boydstun's view, the only overlapping work done for these claims was for the development of factual issues, not on efforts to establish that Aguilar-Padilla had a cognizable claim pursuant to the OSEA's anti-retaliation provision. Whether the district court applied the correct legal standard to the determination of attorney's fees is reviewed de novo, and the fees award itself is reviewed for an abuse of discretion. *Roberts v. City of Honolulu*, 938 F.3d 1020, 1023 (9th Cir. 2019).

The district court identified the correct legal standard governing the fees award. Applying that standard, the court concluded that Aguilar-Padilla was required to prove unlawful termination in order to succeed on Claim 2, his state anti-retaliation claim, and to recover full statutory damages on Claim 1, his federal sick leave claim. The court reasoned that "full resolution of this case would have required a trial that closely resembled the actual trial" even without Claim 2. In the district court, Boydstun conceded that a similar trial would have been necessary to fully resolve Claim 1.

Nevertheless, Boydstun points us to Aguilar-Padilla's counsel's work opposing Boydstun's motion to dismiss Claim 2 and argues that this work was not necessary to prosecute Claim 1. We cannot say that the district court abused its discretion by ruling that Aguilar-Padilla's defeat of the motion to dismiss Claim 2 was essential to his full success on Claim 1. The motion argued that Aguilar-Padilla had failed to establish facts sufficient to establish that he was discharged for exercising a right afforded by the anti-retaliation provision. Without proving a retaliatory motive, Aguilar-Padilla could not demonstrate entitlement to full damages pursuant to the federal statute supporting Claim 1, and he could recover only sick pay up to the date he was terminated. *See* Families First Coronavirus Response Act, Pub. L. No. 116–127, div. E, § 5105, 134 Stat. 178, 197 (2020) (codified at 29 U.S.C. § 2601 note) (subjecting employer who violates COVID leave provision to penalties under the Fair Labor Standards Act § 216, which include payment of lost wages and liquidated damages). In the trial court, Boydstun did not dispute that Aguilar-Padilla's total recovery pursuant to Claim 1 was dependent upon the jury's finding that Boydstun took retaliatory action in response to Aguilar-Padilla's assertion of a protected right.

However, Boydstun also argues that Aguilar-Padilla's counsel's work on damages recoverable only pursuant to Claim 2 was both apportionable and reasonably identifiable. We agree that there are at least some fee entries that should

have been deducted from the attorney's fees award.[4] We remand to the district court to deduct the fees devoted solely to counsel's work on Claim 2 damages.[5]

The decision of the district court is **AFFIRMED** except as to the award of attorney's fees, which is **VACATED AND REMANDED**.

---

[4] In the exhibit Boydstun filed in district court objecting to Aguilar-Padilla's motion for attorney's fees and costs, we note some fee entries that appear to be clearly apportionable: (a) June 24, 2021, "review case law on remedies for 654.062," for $418.00; (b) December 4, 2023, "PTC rsch: availability of emotional harm damages," for $317.00; (c) January 18, 2024, "research procedural propriety of raising emotional harm availability," for $1,828.40; (d) January 19, 2024, "research emotional harm," for $2,612.00; (e) January 20, 2024, "prepare response re: emotional harm," for $2,285.50; (f) January 21, 2024, "draft response to post-trial motions: (substantive) availability of noneconomic damages," for $2,416.10; and (g) January 22, 2024, "prepare response re: procedural bar to challenging emotional harm availability," for $3,069.10. *See* Dist. Ct. Dkt. 162.

[5] The district court is best suited for this task. While some billing entries are clearly apportionable, certain entries are more ambiguous, such as the September 8, 2023, entry for work to "[r]eview materials on damages."